IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| CHRISTIAN OKORIE AND CHARITY OKORIE<br>15835 Crabbs Branch Way, Suite B<br>Derwood, MD 20855<br><br>          Plaintiffs,<br><br>v.<br><br>TRANS UNION, LLC<br>555 W. Adams St<br>Chicago, IL 60661<br><br>     Serve:  CSC – Lawyers Incorporating Service Co.<br>              7 St. Paul St, Suite 820<br>              Baltimore, MD 21202<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.<br>505 City Pkwy West<br>Orange, CA 92668<br><br>     Serve:  The Corporation Trust, Inc.<br>              2405 York Rd, Suite 201<br>              Lutherville Timonium, MD 21093<br><br>EQUIFAX INFORMATION SERVICES, LLC<br>1550 Peachtree Street, NW<br>Atlanta, GA 30309<br><br>     Serve:  CSC – Lawyers Incorporating Service Co.<br>              7 St. Paul St, Suite 820<br>              Baltimore, MD 21202<br><br>NATIONAL CREDIT AUDIT CORP.<br>1100 Alderman Drive<br>Alpharetta, GA 30005<br><br>     Serve:  CSC – Lawyers Incorporating Service Co.<br>              7 St. Paul St, Suite 820<br>              Baltimore, MD 21202<br><br>          Defendants. | Civil Action No. 8:22-cv-426 |

## COMPLAINT

Plaintiffs Christian Okorie and Charity Okorie, by counsel, file this Complaint against Defendants Trans Union, LLC ("Trans Union"); Experian Information Solutions, Inc. ("Experian"); Equifax Information Services, LLC ("Equifax"); and National Credit Audit Corp. ("NCAC") (collectively, "Defendants"). In support of their claims, Plaintiffs allege as follows:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2. The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). To achieve its goals, the FCRA contains requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information in their credit reports. 15 U.S.C. § 1681i.

3. In this case, NCAC furnished inaccurate, derogatory information to Equifax, Experian, and Trans Union, which was ultimately reported on Plaintiffs' credit reports. After Plaintiffs disputed the inaccurate information with each of the consumer reporting agencies, Defendants failed to investigate Plaintiffs' disputes or correct the inaccurate reporting.

4. As a result, Plaintiffs allege claims against Experian, Equifax, and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiffs' credit reports in violation of the FCRA, 15 U.S.C. §1681e(b), and for failing to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

5. Plaintiffs also allege claims against NCAC for violating the FCRA, § 1681s-2(b)(1) by failing to properly investigate Plaintiffs' disputes and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692e, for attempting to collect a debt from Plaintiffs that they did not owe.

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 168lp, and 15 U.S.C. § 1692k(d).

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and Division.

## PARTIES

8. Plaintiffs are each a natural person residing in this District and Division and a consumer under 15 U.S.C. § 1681a(c) and 15 U.S.C. § 1692a(3).

9. Trans Union is a foreign limited liability company authorized to do business in Maryland through its registered offices in Baltimore. Trans Union is a "consumer reporting agency" under 15 U.S.C. § 1681a(f).

10. Experian is a foreign corporation authorized to do business in Maryland through its registered offices in Lutherville Timonium. Experian is a "consumer reporting agency" under 15 U.S.C. § 1681a(f).

11. Equifax is a foreign limited liability company authorized to do business in Maryland through its registered offices in Baltimore. Equifax is a "consumer reporting agency" under 15 U.S.C. § 1681a(f).

12. NCAC is a foreign corporation authorized to do business in Maryland through its registered offices in Baltimore. It is a furnisher governed by the FCRA and a "debt collector" under 15 U.S.C. § 1692a(6).

## FACTS

13. On June 27, 2016, Plaintiffs signed a lease with Avery Park Partners for an apartment in Silver Spring Maryland.

14. The lease term ran from July 5, 2016 to June 4, 2017.

15. After June 4, 2017, the lease automatically renewed month to month unless Plaintiffs gave 60 days' written notice that they intended to terminate the lease and move out of the apartment.

16. The lease stated that if Plaintiffs did not provide the required termination notice, there would be an early termination fee.

17. On April 2, 2017—63 days before the lease ended—Plaintiffs delivered written notice to the apartment complex's leasing office that they intended to terminate their lease and move out of the apartment.

18. Despite this notice, the apartment complex charged Plaintiffs an early termination fee and other improper charges associated with the so-called "early termination" of their lease.

19. To be clear, these fees and charges were improper because Plaintiffs had provided the appropriate lease termination notice.

20. Plaintiffs refused to pay the improper fees and charges.

21. At some point after Plaintiffs moved out of the apartment, the apartment complex sold the delinquent account to Defendant NCAC for collection.

4

22. To coerce Plaintiffs into paying this debt—that they did not owe—NCAC started reporting the account as delinquent and unpaid to Defendants Equifax, Experian, and Trans Union.

23. Plaintiffs learned of this inaccurate credit reporting when they applied to rent an apartment in May 2021.

24. Plaintiffs' rental application was denied, in part, because there was an unpaid rental balance—the NCAC collection account—on their Experian credit report.

25. Shortly afterward, Plaintiffs learned that the NCAC collection account was reporting on all of their credit reports.

26. Plaintiffs disputed this inaccurate information with Equifax, Experian, and Trans Union several times, including in June 2021 and September 2021. They attached a copy of the lease and their lease cancellation notice to show that they had properly terminated their lease and that the lease termination charges were improper.

27. Upon information and belief, Experian, Trans Union, and Equifax forwarded notification of Plaintiffs' disputes to NCAC.

28. In response to Plaintiffs' disputes, each Defendant failed to conduct an adequate investigation.

29. Instead, Defendant NCAC merely confirmed the inaccurate information that was already reflected in its system and did not consider any of the information that the Plaintiffs attached to their lawsuit, which demonstrated that its prior reporting was inaccurate.

30. And once Defendant NCAC provided the outcome of its investigation to Equifax, Experian, and Trans Union, they accepted NCAC's response without conducting any further inquiry, like reviewing the documentation that Plaintiffs attached to their disputes.

31. Plaintiffs also send a letter directly to NCAC in September 2021 disputing the debt. Again, Plaintiffs attached a copy of their lease and their written notice terminating the lease.

32. NCAC responded to the Plaintiffs' letter on or around October 2021 and stated that the account balance was correct, that the Plaintiffs still owed a balance on the account, and it would continue to report the balance to the credit-reporting agencies. This letter stated that it was an attempt to collect a debt.

33. As a result of Defendants' conduct, Plaintiffs have suffered significant actual damages, including a rental denial, a decreased credit score, reputational damage, and emotional distress.

### *Defendants Willfully Violated the FCRA*

34. As a standard practice, Equifax, Experian, and Trans Union do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite many court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

35. Upon information and belief, and consistent with their standard policies and procedures, Equifax, Experian, and Trans Union automatically generated their "investigation"

results once NCAC provided its responses to Plaintiffs' disputes, verified NCAC's reporting, and no employee took any additional steps after NCAC provided its responses to Plaintiffs' disputes.

36. Instead, Equifax, Experian, and Trans Union blindly accepted NCAC's version of the facts and continued to report the inaccurate, derogatory information on Plaintiffs' credit reports.

37. In addition, Equifax, Experian, and Trans Union have each been sued in federal court by consumers alleging violations like the ones here, including that it inaccurately reported information from furnishers (like NCAC) without ensuring that the information was as accurate as possible or by failing to adequately investigate and respond to a consumer's dispute.

38. Just in the last 12 months alone, Experian has been named in FCRA lawsuits over 1,200 times, Equifax over 1,800 times, and Trans Union over 2,300 times.

39. Equifax, Experian, and Trans Union continue the practice of parroting the response from their furnishers even though they had been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

40. Equifax, Experian, and Trans Union do not intend to modify their dispute-processing procedures because doing so would skyrocket their operating expenses.

41. Instead, Equifax, Experian, and Trans Union intentionally choose not to comply with the FCRA to lower their costs and increase profits. As a result, Equifax's, Experian's, and Trans Union's FCRA violations were willful.

42. In addition, NCAC's processing of consumer disputes was willful and carried out in reckless disregard for a consumer's rights under the FCRA. For example, NCAC's conduct was accomplished through intended procedures, which prioritizes efficiency and speed over making sure that the disputes are investigated thoroughly and accurately.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
## (DEFENDANTS TRANS UNION, EXPERIAN, and EQUIFAX)

43.     Plaintiffs incorporate the preceding allegations.

44.     Trans Union, Experian, and Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in preparing Plaintiffs' credit reports and credit files they published and maintained.

45.     Because of Trans Union's, Experian's, and Equifax's conduct, Plaintiffs suffered actual damages, including: a reduced credit score, reputational damage, embarrassment, humiliation, and other emotional distress.

46.     Trans Union's, Experian's, and Equifax's violations of § 1681e(b) were willful, rendering them liable to Plaintiffs for actual damages, statutory damages, punitive damages, costs, and attorney's fees under 15 U.S.C. § 1681n. In the alternative, they were negligent, which entitles Plaintiffs to recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i
## (DEFENDANTS TRANS UNION, EXPERIAN, and EQUIFAX)

47.     Plaintiffs incorporate the preceding allegations.

48.     Trans Union, Experian, and Equifax violated multiple sections of § 1681i, including: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide NCAC with all the relevant information about Plaintiffs' disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiffs in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Plaintiffs' credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

49. Because of Trans Union's, Experian's, and Equifax's violations of §1681i, Plaintiffs suffered actual damages, including: a reduced credit score, reputational damage, embarrassment, humiliation, and other emotional distress.

50. Trans Union's, Experian's, and Equifax's violations of § 1681i were willful, rendering them liable to Plaintiffs for actual damages, statutory damages, punitive damages, costs, and attorney's fees under 15 U.S.C. § 1681n. In the alternative, they were negligent, entitling Plaintiffs to recovery under 15 U.S.C. § 1681o.

**COUNT THREE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)**
**(DEFENDANT NCAC)**

51. Plaintiffs incorporate the preceding allegations.

52. On one or more occasion within the past two years, NCAC violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to properly investigate Plaintiffs' disputes.

53. When Plaintiffs disputed the account with Trans Union, Experian, and Equifax, NCAC used a dispute system named, "e-Oscar," which has been adopted by the consumer reporting agencies and their furnisher-customers like NCAC. E-Oscar is an automated system, and the procedures used by the credit reporting agencies are systemic and uniform.

54. When the consumer reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

55. Upon information and belief, the ACDV form is the way NCAC has elected to receive consumer disputes under 15 U.S.C. § 1681i(a).

56. Upon information and belief, Plaintiffs allege that Trans Union, Experian, and Equifax forwarded Plaintiffs' dispute via an ACDV to NCAC.

57. NCAC understood the nature of Plaintiffs' disputes when it received the ACDV form.

58. Upon information and belief, when NCAC received the ACDV form containing Plaintiffs' disputes, NCAC followed a standard and systemically unlawful process where it only reviews its own internal computer screen for the account and repeats back the same information to the ACDV system that was previously reported to the credit reporting agency.

59. Upon information and belief, when NCAC receives a consumer dispute through e-Oscar, it does not conduct a substantive review of any sort to determine whether the information already in its computer system is itself accurate.

60. Because of NCAC's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiffs suffered actual damages, including: a reduced credit score, reputational damage, embarrassment, humiliation, and other emotional distress.

61. NCAC's conduct in violating § 1681s-2(b)(1)(A) was willful, rendering it liable to Plaintiffs for punitive damages under 15 U.S.C. § 1681n. In the alternative, NCAC was negligent, entitling Plaintiffs to recover under 15 U.S.C. §1681o.

62. Plaintiffs may recover actual damages, statutory damages, costs, and attorney's fees from NCAC under 15 U.S.C. §§ 1681n and 1681o.

**COUNT FOUR:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)**
**(DEFENDANT NCAC)**

63. Plaintiffs incorporate the preceding allegations.

64. On one or more occasions within the past two years, NCAC violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer reporting agencies.

65. As Plaintiffs detailed in the previous Count, NCAC has elected to use the e-Oscar system to receive FCRA disputes from the consumer reporting agencies.

66. When it received the ACDV forms from the consumer reporting agencies, NCAC did not review any of the documentation that Plaintiffs submitted with their dispute, which demonstrated that its reporting was inaccurate.

67. If NCAC had reviewed these documents, it would have known that its previous reporting was incorrect and needed to be updated.

68. NCAC also ignored the other information that the consumer reporting agencies provided about Plaintiffs' disputes, including the two-digit code that the agencies listed on the ACDV form.

69. NCAC knew the meaning of the dispute codes used by the consumer reporting agencies in e-Oscar.

70. NCAC does not contend that the ACDV system is an inadequate means to receive FCRA disputes through the consumer reporting agencies.

71. NCAC understood Plaintiffs' disputes and that Plaintiffs claimed the information was inaccurate.

72. Even so, NCAC did not update its incorrect reporting on the account.

73. Because of NCAC's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Plaintiffs suffered actual damages, including: a reduced credit score, reputational damage, embarrassment, humiliation, and other emotional distress.

74. NCAC's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for punitive damages under 15 U.S.C. § 1681n. In the alternative, NCAC was negligent, entitling Plaintiffs to recover under 15 U.S.C. § 1681o.

75. Plaintiffs may recover actual damages, statutory damages, costs, and attorney's fees from NCAC under 15 U.S.C. §§ 1681n and 1681o.

## COUNT FIVE:
### VIOLATION OF FDCPA, 15 U.S.C. § 1692e
### (DEFENDANT NCAC)

76. Plaintiffs incorporate the preceding allegations.

77. NCAC violated § 1692e of the FDCPA by using false, deceptive, or misleading representations and means when it tried to collect a debt from the Plaintiffs. For example. NCAC sent letters to the Plaintiffs that attempted to collect a debt from them that they did now owe and falsely represented to the consumer reporting agencies that Plaintiffs owed money to Avery Park.

78. Plaintiffs suffered actual damages as a result of NCAC's violation of § 1692e, including a housing denial, a reduced credit score, embarrassment, humiliation, and other emotional distress.

79. Plaintiffs may recover actual damages, statutory damages, their reasonable attorney's fees, and costs, under 15 U.S.C. § 1692k.

WHEREFORE, Plaintiffs demand judgment for actual, statutory, and punitive damages against Defendants as pled above; their attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and any other relief the Court finds appropriate.

**PLAINTIFFS DEMAND A JURY TRIAL.**

                                   Respectfully Submitted,
                                   **PLAINTIFFS**

                                   By: */s/ Kristi C. Kelly*
                                   Kristi Cahoon Kelly, Bar No. 07244
                                   J. Patrick McNichol, Bar No. 19034
                                   KELLY GUZZO, PLC
                                   3925 Chain Bridge Road, Suite 202
                                   Fairfax, VA 22030
                                   Phone: 703-424-7572
                                   Fax: 703-591-0167
                                   Email: kkelly@kellyguzzo.com
                                                         pat@kellyguzzo.com

                                   *Counsel for Plaintiffs*